# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID ROBINSON, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 18-1743 |
| PHILIP MORRIS USA, INC, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Goldberg, J.**                                                                           April 22, 2019

## MEMORANDUM OPINION

Plaintiff David Robinson brings this *pro se* action against Defendants R.J. Reynolds Tobacco Company ("Reynolds") and Philip Morris USA, Inc. ("Philip Morris") (collectively, "Defendants") for their roles in the manufacture and advertisement of cigarette products that allegedly caused Plaintiff to contract various forms of cancer. Both Defendants have filed Motions to Dismiss to which Plaintiff has not responded.[1] Upon consideration of the merits of these Motions, I will grant the Motions in part and deny them in part.

---

[1] Plaintiff filed his original Complaint on April 25, 2018, and an Amended Complaint on June 12, 2018, following which he sought appointment of counsel. The Honorable Gerald A. McHugh, to whom this case was originally assigned, denied Plaintiff's request, noting that the matter sounded in tort and not in a deprivation of civil rights. This case was reassigned to my docket and, on September 5, 2018, Defendants filed Motions to Dismiss. Plaintiff responded with a Motion to Stay pending appointment of counsel in light of his ongoing chemotherapy treatment. On December 10, 2018, I again denied his request for appointment of counsel without prejudice, noting that the factors set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993) did not warrant counsel at this time. Cognizant of the obstacles posed by his chemotherapy, however, I granted Plaintiff an additional forty-five days in which to respond to the Motions. Despite having several months in which to prepare a response, Plaintiff has not done so, but has re-raised his request for counsel.

**I.    FACTUAL BACKGROUND**

The Amended Complaint sets forth the following facts: [2]

As of the time of the original Complaint, Plaintiff was seventy-four years old and had been addicted to smoking cigarettes since 1952. In 1955, at the age of twelve, Plaintiff began smoking Kools, Salems, and Newport Cigarettes. Plaintiff was enticed to use Defendants' cigarette products by their commercials and ads, "which made it look cool to smoke." (Am. Compl. ¶¶ 4–5.)

As a result of using Defendants' products, Plaintiff became addicted to cigarettes and suffered the following medical conditions:

- Kidney cancer (first discovered on March 9, 2011; right kidney removed May 24, 2011; part of left kidney removed September 27, 2011);

- Prostate cancer (received radiation treatment from April 25, 2016 to June 22, 2016)

- Testicular cancer (left testicle removed January 6, 2017);

- Brain cancer (discovered October 18, 2017, had brain surgery October 25, 2017,[3] underwent radiation in November 2017);

- Lung cancer (discovered November 14, 2017).

(Id. ¶ 10.)

---

[2]  When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). In accordance with this principle, my recitation of the facts assumes the truth of the factual statements in the Amended Complaint.

[3]  The Complaint states that the brain surgery was in October 2018, but, given the surrounding context, I assume that this is a typographical error.

On November 14, 2017, Dr. Bala Natarajan from Einstein Philadelphia Hospital performed a biopsy on Plaintiff's right lung and determined he had lung cancer. On January 12, 2018, Dr. Natarajan found that Plaintiff had cancer in both lungs. During a subsequent consultation, Dr. Natarajan informed Plaintiff that his cancer is the result of smoking. (Id. ¶¶ 11–12.)

Plaintiff filed suit against Defendants on April 25, 2018, setting forth three causes of action. First, he brings a claim for product liability, alleging that Defendants produced cigarette products with the full knowledge that their products were hazardous and would cause cancer. Second, he sets forth a negligence claim, alleging that Defendants "maliciously and deliberately added more carcinogens to their products, and manipulated the nicotine levels and delivery system" to intentionally cause Plaintiff to become addicted. Finally, Plaintiff maintains a claim for "youth marketing." He seeks compensatory damages in the amount of $5 million and punitive damages in the amount of $5 million. (Id. ¶¶ 14–24.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." United States ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979) (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520–21. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

**III.    DISCUSSION**

Defendants posit that Plaintiff's claims must be dismissed because: (1) all of Plaintiff's claims are time barred; (2) the product liability claim improperly rests on a failure to warn theory; (3) Plaintiff's negligence claim fails to establish a valid design defect claim; (4) Plaintiff's "youth marketing" claim is invalid; and (5) Plaintiff improperly served Defendants under Federal Rule of Civil Procedure 4. In addition, Defendant Philip Morris separately argues that the Amended Complaint does not allege that Philip Morris manufactured any of the cigarettes that allegedly caused Plaintiff's injuries.

1.    Statute of Limitations

Defendants first contend that Plaintiffs claims are barred by the statute of limitations.

Under Pennsylvania law,[4] the statute of limitations for personal injury claims is two years. See 42 Pa. Cons. Stat. §§ 5524(2), 5524(7). "This applies to claims based upon theories of failure to warn; design defect; intentional infliction of emotional distress; and negligence and strict liability." Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 829 (E.D. Pa. 2001) (citations omitted). Usually, the statute of limitations for a claim which arises under Pennsylvania law begins to run at "the occurrence of the final significant event necessary to make the claim suable." Barnes v. American Tobacco Co., 161 F.3d 127, 152 (3d Cir. 1998) (citing Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1966)). "[I]t is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform

---

[4] "Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit, and statutes of limitations are considered substantive." Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 487 (3d Cir. 1985) (citing Guaranty Trust Co. v. York, 326 U.S. 99 (1945)).

himself of the facts and circumstances upon which the right of recovery is based and to initiate suit within the prescribed period." Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000) (citing Hayward v. Med. Ctr. of Beaver Cty., 608 A.2d 1040, 1042 (1992)); see also Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983). In some cases, the application of the "discovery rule" will toll the running of the limitations period until "the plaintiff knows or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." Romah v. Hygienic Sanitation Co., 705 A.2d 841, 858 (Pa. Super. 1997). Generally, "once a plaintiff possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim." Id. at 857 (emphasis omitted) (quoting Vernau v. Vic's Market, Inc., 896 F.2d 43, 46 (3d Cir. 1990)). The commencement of the limitations period may be determined as a matter of law only "where the facts are so clear that reasonable minds cannot differ." Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000) (citing Hayward v. Med. Ctr. of Beaver Cty., 608 A.2d 1040 (Pa. 1992)).

Here, I cannot determine from the face of the Amended Complaint when the statute of limitations commenced as to Plaintiff's claims. Plaintiff alleges that he started smoking Defendants' products in 1955 and, as a result of his addiction, suffered various medical conditions, including: kidney cancer (discovered in March 2011), prostate cancer (discovered April 25, 2016), testicular cancer (January 2017), brain cancer (October 2017), and lung cancer (November 2017). As Plaintiff filed the current cause of action on April 25, 2018, the only cancer onset date that falls outside the two-year limitations period is that of the kidney cancer. Nothing in the Amended Complaint suggests that Plaintiff knew or had reason to know, as of March 2011, that his kidney cancer was attributable to smoking. Indeed, Plaintiff alleges that he was first told by his doctor, in January 2018, that his cancers occurred as a result of smoking. Taking these allegations in the

6

light most favorable to Plaintiff, I cannot determine at the pleading stage that the statute of limitations bars Plaintiff's claims.

### 2. Product Liability Claim

Defendants next seek to dismiss Plaintiff's product liability claim. The Amended Complaint alleges:

> 14. **Product Liability:** The above named Defendants produced cigarette products with the full knowledge that their products [were] hazardous to their customers' health, and would cause cancer in the user/smoker and non-smoker, via second-hand smoke.
>
> 15. The Plaintiff was totally unaware of the dangers of the Defendants' products especially, as concluded by two (2) different federal cases, that the Defendants vigorously, publicly, and adamantly denied any health risk to their cigarette products.
>
> 16. The Plaintiff's medical records prove[] that his multiple types of cancer was the results of the Defendants' products. Presently, the Plaintiff [is] undergoing chemotherapy treatment for lung cancer.

(Am. Compl. ¶¶ 14–16.) Construed liberally, this cause of action plausibly alleges liability for both failure to warn and for manufacture of an inherently dangerous product.

To the extent Plaintiff sets forth a failure-to-warn claim, Defendants contend that the claim is preempted by the 1969 amendment to Public Health Cigarette Smoking Act, 15 U.S.C. § 1331, et seq. (the "Labeling Act"). The original statute provided, in relevant part, that "[n]o statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of the Act." 15 U.S.C. § 1334(b) (1965). The Public Health Cigarette Smoking Act of 1969, which became effective on July 1, 1969, amended the preemption provision of the Labeling Act to state that "no requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions

7

of this chapter." 15 U.S.C. § 1334(b) (1969). The United States Supreme Court has interpreted this 1969 amendment as preempting failure-to-warn claims to the extent they "require a showing that [defendants'] post-1969 advertising or promotions should have included additional or more clearly stated warnings." Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 524 (1992).

Here, Plaintiff asserts that Defendants "vigorously, publicly, and adamantly denied any health risk to their cigarette products"—an allegation which, liberally construed, suggests that Defendants failed to warn of the risk of their products. (Am. Compl. ¶ 15.) As any failure-to-warn claims predicated on post-1969 advertising are pre-empted, these claims must be dismissed. However, Plaintiff also alleges that he began smoking Defendants' products in 1955, approximately fourteen years before Congress passed the Public Health Smoking Act of 1969. The Labeling Act's preemption does not apply to failure-to-warn claims regarding advertisements prior to 1969. See McCracken v. R.J. Reynolds Tobacco Co., No. 17-4495, 2018 WL 2304041, at *5 (E.D. Pa. May 21, 2018) (declining to dismiss failure-to-warn claims premised on pre-1969 promotions). Thus, Plaintiff's failure-to-warn claims involving pre-1969 advertising or promotion are not pre-empted.

To the extent Plaintiff's product liability claim alleges that cigarettes are inherently dangerous, Defendants contend that this claim is also preempted and not legally cognizable. Under the doctrine of implied preemption, a state tort claim imposing liability for an act declared legal by federal law may not be maintained where the state law "stands as an obstacle to the . . . purposes and objective of Congress." Jeter ex rel. Estate of Smith v. Brown & Williamson Tobacco Corp., 294 F. Supp. 2d 681, 686 (W.D. Pa. 2003) (quoting Geier v. Am. Honda Motor Co., 529 U.S. 861, 872 (2000)). Congress has declared smoking legal. Indeed, "[i]n response to the health risks of cigarette smoking, Congress chose to regulate the sale of cigarettes instead of completely banning

8

them. Id. (citing FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 137–39 (2000)). Thus, to allow a claim that cigarettes are "unreasonably dangerous" because they contain carcinogens—a characteristic inherent in all cigarettes—"would essentially render selling or manufacturing a cigarette to be a tort, thereby interfering with Congress's policy in favor of keeping cigarettes on the market." Id. at 685–86 (internal quotation marks omitted).

Here, Plaintiff alleges that "Defendants produced cigarette products with the full knowledge that their products [were] hazardous to their customers' health, and would cause cancer in the user/smoker and non-smoker, via second-hand smoke." (Am. Compl. ¶ 14.) This is a well-recognized risk inherent in all cigarettes, and courts routinely take judicial notice of the risks associated with tobacco use. McKay v. Republic Tobacco Co., No. 00-2366, 2001 WL 12223 (E.D. Pa. Feb. 13, 2001) (citing cases recognizing the "widely known, well-publicized" risks associated with tobacco use); Hite v. R.J. Reynolds Tobacco Co., 578 A.2d 417, 421 (Pa. Super. 1990) (rejecting claims based on inherent risk of tobacco). As it is not a risk particular to Defendants' products, I find this claim to be impliedly preempted.

### 3. Negligence Claim

Defendants next move to dismiss Plaintiff's negligence claim, which alleges:

> 17. The above named Defendants maliciously and deliberately added more carcinogens to their products, and manipulated the nicotine levels and delivery system, including adding sugar to mask the bitter taste of the increased nicotine level, and ammonia to enhance the addictive quality of their cigarette products to intentionally addict the Plaintiff to them (products) to increase their profit shares as recorded in the cited by both federal jurisdictions.
>
> 18. By increasing the amount of carcinogens—tar delivered to the Plaintiff constitutes a defective product which caused him to smoke more cigarettes. And, the more the Plaintiff smoked increased his chances of developing cancer, which he currently has, and had. It seems, that when the Plaintiff is treated for one type of cancer another one pops up.

9

(Am. Compl. ¶¶ 17–18.)

Defendants allege that this claim fails for two reasons. First, Defendants generally challenge Plaintiff's pleading of this claim, noting that Plaintiff fails to state when these alleged acts occurred, whether they occurred with respect to the products Plaintiff allegedly smoked, or whether these alleged defects impacted his health status. Defendants' challenge, however, demands more than required under Twombly/Iqbal pleadings standards. Reading the Amended Complaint liberally under these standards, Plaintiff adequately alleges that he began smoking cigarettes at the age of nine and, by the age of twelve, he started smoking Kools, Salems, and Newport Cigarettes. (Am. Compl. ¶ 4.) He then alleges that, at some point, Defendants began increasing the amount of nicotine in their cigarettes to sustain addiction. (Id. ¶¶ 7(III), 8.) As a result of these nicotine additions, Plaintiff claims that he became addicted to cigarettes and, in turn, contracted various forms of cancer. (Id. ¶ 10.) At this early juncture of the litigation, such allegations suffice to state a claim upon which relief may be granted.

Defendants' second argument—that the risks associated with cigarettes are inherent and obvious—likewise does not warrant dismissal of the negligence claim at the pleading stage. Although courts generally reject claims based on the inherent risks of tobacco products, they recognize design defect claims based on a specific defect such as the addition of "excessive nicotine" to the cigarettes to increase addiction. See, e.g., McCracken, 2018 WL 2304041, at *6 (finding plausible defective design claim based on allegation that manufacturers altered the amount of nicotine to encourage continued addiction); Bougopoulos v. Altria Grp., Inc., 954 F. Supp. 2d 54, 59 (D.N.H. 2013) (finding that complaint stated a claim where it alleged that "the product defect, manipulated nicotine, caused [plaintiff] to remain addicted to cigarettes and become a life-long smoker, which in turn led to his COPD"). Accordingly, I decline to dismiss Plaintiff's

negligence claim at this early stage of the litigation and find the issue better suited for a motion for summary judgment.

### 4. Youth Marketing Claim

Plaintiff's final cause of action sets forth a claim for "youth marketing." Specifically, he generally alleges that Defendants designed their products to entice minors to use their products. (Am. Compl. ¶¶ 19–20.) Plaintiff, however, does not cite, and I cannot find, any cause of action for "youth marketing" under Pennsylvania law. See McCracken, 2018 WL 2304041, at *8 (dismissing claim of "unlawful and unfair targeting of minors" against tobacco manufacturers because there is no "statutory or common law basis for recovery"). Accordingly, I dismiss this claim.

### 5. Insufficient Process

Finally, both Defendants claim that the Amended Complaint should be dismissed for insufficient process. Specifically, they contend that Federal Rule of Civil Procedure 4(a)(1)(B) requires a valid summons "be directed to the defendant." Id. "A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served." Id. at R. 4(b). If there are multiple defendants, the plaintiff "may serve copies of a single original bearing the names of multiple defendants" only "if the addressee of the summons is effectively identified." Id. cmt. to subdiv. (b). Here, however, the summonses served on the Defendants, individually, were not directed to anyone in particular. Rather, the space labeled "To (*Defendant's name and address)*" was left blank. (ECF No. 24.) According to Defendants, they had no indication as to which party or parties their summonses were directed.

It is well settled that district courts have discretion to dismiss a complaint where a plaintiff has failed properly effect service on a defendant. Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir.

1992). In the face of improper service, a court can dismiss the action or grant a Plaintiff an extension of time for service. Fed. R. Civ. P. 4(m). A two-step procedure governs: (1) if good cause exists for an extension of time, the district court must extend time for service; and (2) if good cause does not exist, the court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service. McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998). The Third Circuit has defined "good cause" as being tantamount to "excusable neglect" under Rule 6(b), Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1312 (3d Cir. 1995), and has identified the following factors as relevant to the evaluation of whether excusable neglect has occurred:

> 1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure, 2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, 3) counsel's failure to provide for a readily foreseeable consequence, 4) a complete lack of diligence or 5) whether the inadvertence resulted despite counsel's substantial good faith efforts towards compliance.

Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988).

Given these principles, I will extend the time for service in this matter to allow such proper service. Although Plaintiff's *pro se* status does not excuse him from complying with the rules, I cannot disregard the fact the Plaintiff diligently made a timely effort to serve both Defendants. The defect in service was minor, involved a technicality, and did not prevent either Defendant from either receiving notice of the Amended Complaint or from timely responding to it. Thus, rather than dismissing this action, I will grant Plaintiff a forty-five day extension in which to perfect service on Defendants in accordance with the Federal Rules of Civil Procedure. Specifically, when serving the summons on each Defendant, Plaintiff is directed to fill in the specific Defendant's name in the section provided on the summons form.

6. <u>Defendant Philip Morris's Motion to Dismiss for Lack of Product Use</u>

In its separate Motion to Dismiss, Defendant Philip Morris alleges that the Amended Complaint should be dismissed because the pleading does not allege that Philip Morris USA manufactured the cigarettes that allegedly caused Plaintiff's injuries. Rather, the Amended Complaint asserts that "Plaintiff began smoking Kools, Salems, and Newport cigarettes. (Am. Compl. ¶ 4.) Philip Morris attaches to its Motion an affidavit certifying that it does not and has never manufactured these cigarette brands. (Def. Philip Morris's Mot. to Dismiss, Ex. A.)

Philip Morris's argument is premature at this stage of the litigation. Plaintiff adequately pleads causation by alleging that "Defendants['] intentional actions and omissions are the direct cause of Plaintiff becoming addicted to *their* cigarette products." (Am. Compl. ¶ 6 (emphasis added).) Philip Morris's contrary affidavit is not properly considered at this juncture. In adjudicating a Rule 12(b)(6) motion, I may consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014). As the attached affidavit falls into none of these categories, I would have to convert its Motion to Dismiss into a motion for summary judgment in order to consider it. Fed. R. Civ. P. 12(d). Doing so without notice and without any discovery is improper. <u>Id.</u> Accordingly, I will decline to consider the affidavit and will deny Philip Morris's Motion to Dismiss. <u>See</u> <u>Gross v. Stryker Corp.</u>, 858 F. Supp. 2d 466, 479 (W.D. Pa. 2012) (declining to consider during a motion to dismiss a defendant's affidavit that it did not manufacture the product at issue in a products liability claim; reserving issue for properly filed summary judgment motion).

**IV. CONCLUSION**

In light of the foregoing, I will dismiss Plaintiff's "product liability" claim to the extent it alleges failure to warn after 1969 and to the extent it contends that cigarettes are inherently dangerous. Moreover, I will dismiss Plaintiff's "youth marketing" claim for lack of a legal basis. Finally, I will grant Plaintiff a forty-five day extension in which to effect proper service. Defendants' Motions will be denied on all other grounds.

An appropriate Order follows.